1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

9

10    CHAD GOODMAN, JON J. OLSON, and          CASE NO. C11-1793MJP
      JAMES WORSHAM,
11                                              ORDER ON DEFENDANTS'
                    Plaintiffs,                 MOTIONS TO DISMISS
12
             v.
13
      HTC AMERICA, INC., a Washington
14    corporation; ACCUWEATHER.COM,
      INC., a Pennsylvania corporation;
15    ACCUWEATHER, INC., a Pennsylvania
      corporation; and ACCUWEATHER
16    INTERNATIONAL, a Delaware
      corporation,
17
                    Defendants.
18

19

20           This matter comes before the Court on two motions brought by Defendants HTC

21    America and AccuWeather to dismiss Plaintiffs' second amended complaint pursuant to Federal

22    Rule 12(b)(1) for lack of standing, Federal Rule 9(b) for failure to plead fraud-based claims with

23    particularity, and Federal Rule 12(b)(6) for failure to adequately state claims under Washington,

24    California, and Minnesota law. (Dkt. Nos. 43, 44.) Defendant HTC America also files a motion

requesting that the Court take judicial notice of the HTC and AccuWeather.com legal terms of use and related contracts. (Dkt. No. 45.) Having reviewed the motions, Plaintiffs' responses (Dkt. Nos. 50, 51, 52), Defendants' replies (Dkt. Nos. 57, 58, 59), and all related filings, and finding this matter suitable for decision without oral argument, the Court enters the following Order:

Defendant HTC America's motion to take judicial notice of the HTC and AccuWeather legal documents is DENIED because the authenticity and nature of these documents is in controversy.

Plaintiffs' first, second, third, fourth, fifth, and seventh claims are DISMISSED with leave to amend because these claims allege fraudulent conduct, but Plaintiffs do not plead these claims with particularity. Because Plaintiffs voluntarily drop their statutory claims under Minnesota law against Defendant AccuWeather, the Court addresses the adequacy of Plaintiffs first four claims only against Defendant HTC America.

Plaintiff's sixth claim, for violation of the "fraud" prong of California's Unfair Competition Law, is DISMISSED with leave to amend because it is not pled with particularity. Plaintiffs' claims under the "unfair" and "unlawful" prongs of California's Unfair Competition Law, along with Plaintiffs' claims for violation of the California Constitution's right to privacy and for unjust enrichment, survive at this stage.

**Background**

Plaintiffs bring this suit as a putative class action against the phone manufacturer HTC America, Inc. and against three entities of the weather forecaster AccuWeather. Plaintiffs allege that the weather applications on certain HTC smartphones transform the phones into surreptitious tracking devices. (Dkt. No. 38 at 2.) Rather that transmitting "coarse" data about a person's

1   location sufficient to provide accurate local weather information, Plaintiffs allege that

2   Defendants designed the AccuWeather application on the HTC EVO 3D and EVO 4G phones to

3   transmit "fine" location data, accurate to identify a customer's location within a few feet. (Id.)

4   Plaintiffs assert this allows Defendants to track their movements, including where they live,

5   work, dine, and shop. (Id. at 10.) Plaintiffs assert Defendants use this information to analyze their

6   behavior, build profiles about them, and sell this information to third parties. (Id. at 10.)

7        Defendant HTC America, Inc., a Washington corporation, is a subsidiary of Taiwan-

8   based HTC Corporation. (Dkt. No. 44 at 11.) HTC America promotes, markets, distributes, and

9   sells smartphones to customers in the United States. (Id.) Plaintiffs also file suit against

10   AccuWeather.com, Inc., a Pennsylvania corporation, AccuWeather, Inc., a Pennsylvania

11   corporation, and AccuWeather International, a Delaware corporation. (Dkt. No. 38 at 5.)

12   Plaintiffs allege that "[t]hese three AccuWeather entities jointly committed the wrongful acts or

13   practices alleged herein and/or are responsible for each other." (Id.)

14        Plaintiffs claim to have suffered three specific types of economic harm as a result of

15   Defendants' acts. First, Plaintiffs allege they overpaid for their phones, because if they knew

16   they were buying surveillance devices, they would have paid less or not bought the phones at all.

17   (Id. at 12.) Second, Plaintiffs assert that Defendants' collection of fine location data takes an

18   unwarranted toll on the battery change and the overall battery life of Plaintiffs' smartphones. (Id.

19   at 2.) Third, Plaintiffs assert Defendants' misappropriation of their fine location data prevented

20   them from using their location information for their own commercial advantage and exposed

21   their personally identifiable information to third parties, who may have intercepted their data.

22   (Id. at 13-14.)

23

24

1       The complaint is brought by three named Plaintiffs: California resident Chad Goodman,

2   who purchased HTC EVO 3D and HTC EVO 4G smartphones; Minnesota resident Jon J. Olson,

3   who purchased a HTC EVO 3D smartphone; and Washington resident James Worsham, who

4   purchased a HTC EVO 4G smartphone. (Dkt. No. 38 at 4.) Under Federal Rule 23, Plaintiffs

5   seek to certify a national class, as well as Minnesota and California subclasses. (Id. at 14.)

6       Plaintiffs' complaint includes nine claims for relief. The first four claims are brought on

7   behalf of Plaintiff Olson and the proposed Minnesota subclass for violations of the Minnesota

8   Prevention of Consumer Fraud Act, Minn. Stat. §§ 325F.68-.70; the Minnesota Unlawful Trade

9   Practices Act, Minn. Stat. §§ 325D.09-.16; the Minnesota Deceptive Trade Practices Act, Minn.

10  Stat. §§ 325D.43-.48; and the Minnesota False Statement in Advertisement law, Minn. Stat. §§

11  325F.67. (Dkt. No. 38 at 17-21.) The fifth claim is brought on behalf of Plaintiff Goodman and

12  the proposed California subclass for unfair and deceptive acts in violation of the California Legal

13  Remedies Act, Cal. Civ. Code § 1750 et seq. (Id. at 21.) The sixth claim is brought on behalf of

14  Plaintiff Goodman and the proposed California subclass for unlawful, unfair, or fraudulent

15  business practices, in violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code

16  § 17200 et seq. (Id. at 22.)

17      The seventh claim is brought on behalf of all three named Plaintiffs and the proposed

18  national class for violations of the Washington Consumer Protection Act, RCW § 19.86.010 et

19  seq. (Id. at 25.) The eighth claim is brought on behalf of Plaintiff Goodman and the proposed

20  California subclass for violations of the California Constitution's right to privacy. Cal. Const. art.

21  1, § 1. (Id. at 26.)  The ninth claim is brought on behalf of all named Plaintiffs and the proposed

22  national class for unjust enrichment. (Id. at 27.) The first five claims are brought solely against

23

24

1  Defendant HTC America. (Id. at 21; Dkt. No. 50 at 22 n.11.) Claims six through nine are brought

2  against all Defendants.

3     Defendants seek to dismiss Plaintiffs' complaint on a number of grounds. First,

4  Defendants argue that Plaintiffs do not have standing because "allegations relating to the

5  transmission and use of 'personally identifiable information' without plaintiffs' awareness or

6  consent do not describe any injury cognizable under Article III or state law." (Dkt. No. 44 at 10.)

7  Second, Defendants assert that each of Plaintiffs' claims sounds in fraud, but the complaint does

8  not meet the heightened pleading requirements of Federal Rule 9(b). (Id.) Third, Defendants

9  assert that Plaintiffs' allegations fail to satisfy the elements of relevant California, Minnesota,

10 and Washington consumer protection statutes, the California Constitution's right to privacy, and

11 unjust enrichment under California, Minnesota, and Washington law. (Id.) Finally, Defendant

12 HTC America asks the Court to strike Plaintiffs' allegations on behalf of the putative national

13 class because Plaintiffs cannot maintain a class asserting common law unjust enrichment claims

14 under the laws of all fifty states and cannot satisfy the commonality or typicality requirements of

15 Rule 23(a). (Id. at 31.)

16                              **Discussion**

17 **A.  Legal Standard**

18     1. Rule 12(b)(1)

19     A challenge to standing under Article III "pertain[s] to a federal court's subject matter

20 jurisdiction" and is therefore "properly raised in a motion under Federal Rule of Civil Procedure

21 12(b)(1)." White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000). In considering a motion to dismiss

22 for lack of jurisdiction, a court takes the allegations in the plaintiff's complaint as true. Bollard v.

23 Cal. Province of the Soc'y of Jesus, 196 F.3d 940, 944-45 (9th Cir. 1999).

24

1    A Rule 12(b)(1) motion may be either facial, where the inquiry is confined to the

2    allegations in the complaint, or factual, where the court is permitted to look beyond the

3    complaint to evidence outside the pleadings. <u>Wolfe v. Strankman</u>, 392 F.3d 358, 362 (9th Cir.

4    2004). The present motion constitutes a facial attack because Defendants argue the allegations in

5    the complaint are insufficient on their face to establish subject matter jurisdiction. (Dkt. No. 43 at

6    7; Dkt. No. 44 at 15.) Therefore, the Court must assume Plaintiffs' allegation to be true and draw

7    all reasonable inferences in their favor. <u>Wolfe</u>, 392 F.3d at 362; Fed. R. Civ. P. 12(b)(1).

8        <u>2. Rule 12(b)(6)</u>

9        In considering a motion to dismiss under Federal Rule 12(b)(6), a court must accept all

10    plaintiff's well-pled factual allegations as true and must draw all reasonable inferences in

11    plaintiff's favor. <u>Wolfe</u>, 392 F.3d at 362. However, Rule 12(b)(6) requires a court to dismiss a

12    claim when "there is no cognizable legal theory or an absence of sufficient facts alleged to

13    support a cognizable legal theory." <u>Navarro v. Block</u>, 250 F.3d 729, 732 (9th Cir. 2001). A

14    plaintiff must plead "more than a sheer possibility that a defendant has acted unlawfully."

15    <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).  "To survive a motion to dismiss, a complaint must

16    contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its

17    face." <u>Id.</u> (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 44, 570 (2007)).

18        <u>3. Rule 9(b)</u>

19        Federal Rule 9(b) requires that, when fraud is alleged, "a party must state with

20    particularity the circumstances constituting fraud . . . ." Rule 9(b) demands that the

21    circumstances constituting the alleged fraud "be specific enough to give defendants notice of the

22    particular misconduct . . . so that they can defend against the charge and not just deny that they

23    have done anything wrong." <u>Kearns v. Ford Motor Co.</u>, 567 F.3d 1120, 1124 (9th Cir. 2004).

24

1   "Rule 9(b) serves three purposes: (1) to provide defendants with adequate notice to allow them to

2   defend the charge and deter plaintiffs from the filing of complaints as a pretext for the discovery

3   of unknown wrongs; (2) to protect those whose reputation would be harmed as a result of being

4   subject to fraud charges; and (3) to prohibit plaintiffs from unilaterally imposing upon the court,

5   the parties and society enormous social and economic costs absent some factual basis." <u>Id.</u> at

6   1125 (internal citations and quotations omitted).

7   **B.  <u>Judicial Notice</u>**

8        As an initial matter, Defendant HTC America asks the Court to take judicial notice of six

9   documents that it claims accompanied or were accessible on Plaintiffs' EVO 3D and EVO 4G

10  smartphones. (Dkt. No. 45.) These documents include the HTC legal terms for the EVO 3D and

11  EVO 4G smartphone models, the AccuWeather.com terms of usage and privacy statement, and

12  sections of the user guides for the phones. (<u>Id.</u> at 2.)  Judicial notice is appropriate for facts "not

13  subject to reasonable dispute" that are either generally known within the jurisdiction of the trial

14  court or "can be accurately and readily determined from sources whose accuracy cannot

15  reasonably be questioned." Fed. R. Evid. 201(b).

16       Judicial notice is not appropriate here, because the accuracy and the nature of the six

17  documents filed by Defendant HTC America are not beyond reasonable controversy. Judges

18  have traditionally erred on the side of caution in taking judicial notice of adjudicative facts. <u>See,</u>

19  <u>e.g.,</u> <u>Shahar v. Bowers</u>, 120 F.3d 211, 214 (11th Cir. 1997) ("the taking of judicial notice of facts

20  is, as a matter of evidence law, a highly limited process."). "Because the effect of judicial notice

21  is to deprive a party of an opportunity to use rebuttal evidence, cross-examination, and argument

22  to attack contrary evidence, caution must be used in determining that a fact is beyond

23  controversy under Rule 201(b)." <u>Rivera v. Philip Morris, Inc.,</u> 395 F.3d 1142, 1151 (9th Cir.

24  2005) (internal citations omitted).

1      The clearest proof that the contractual documents and screenshots at issue here are not

2  beyond controversy comes from the fact that Plaintiffs attack their authenticity in the course of

3  their opposition brief, successfully identifying a number of inconsistencies. (Dkt. No. 51 at 3-5.)

4  Although Defendant HTC America addresses these concerns in its reply brief (Dkt. No. 59 at 2-

5  3), Plaintiffs have not had further opportunity to respond. Even if authenticity is assumed, it is

6  not clear that Plaintiffs ever accessed or read these documents. Further, it is not obvious that

7  these contracts were operative at the time Plaintiffs bought and used their phones. (Id.) For these

8  reasons, these documents are not appropriate subjects for judicial notice.

9      The incorporation by reference doctrine also does not allow these documents to be

10  admitted at this time. In entertaining a motion to dismiss, courts may consider a document "not

11  explicitly refer[red] to" in a complaint but which "the complaint necessarily relies upon." Coto

12  Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010). This rule exists "in order to

13  prevent plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting . . . documents

14  upon which their claims are based." Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007

15  (internal citations omitted). However, "the mere mention of the existence of a document is

16  insufficient to incorporate the contents of a document." Coto, 593 F.3d at 1038. Here, while

17  Plaintiffs assert that Defendants provided "inadequate disclosures about the privacy and security

18  defects" of the phones (Dkt. No. 38 at 11), it is overstatement to suggest that Plaintiffs' claims

19  rely on the contents of the HTC legal terms, the AccuWeather privacy statement, or any other

20  particular document. Plaintiffs do not allege misrepresentation in any specific document; they

21  base their claim on a broader material omissions. (Dkt. No. 38 at 11-12.) Because the documents

22  are in controversy and because they are not necessarily relied upon by the complaint, they are not

23  admissible at this time.

24

**C. Standing**

The bulk of Defendants' attack focuses on the issue of standing. To satisfy the "irreducible constitutional minimum of standing," a plaintiff must allege: (1) an injury-in-fact that is "concrete and particularized" and "actual or imminent not conjectural or hypothetical"; (2) the injury is fairly traceable to the challenged action of the defendant, not the result of the independent action of a third party; and (3) it is likely, not merely speculative, that the alleged injury will be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (citations omitted). In a case brought as a class action, "if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with defendants, none may seek relief on behalf of himself or any other member of the class." Lierboe v. State Farm Mut. Auto Ins. Co., 350 F.3d 1018, 1022 (9th Cir. 2003).

1. Injury in Fact

Defendants first assert that Plaintiffs have not suffered an injury in fact sufficient to meet the requirements of Article III. (Dkt. No. 44 at 16; Dkt. No. 43 at 8.) Plaintiffs allege three forms of economic injury: overpayment for their HTC smartphones, diminution in value of their phones due to lost battery utility and lifespan, and misappropriation of their valuable personally identifiable information. (Dkt. No. 50 at 9.) Plaintiffs plead the first two alleged injuries— overpayment and diminution in value of their phones—to a level sufficient to show injury in fact. The third alleged injury, misappropriation of personally identifiable information, does not allege injury in fact, absent a separate statutory or constitutional right, because no plaintiff alleges that his data was compromised or that he actually suffered any harm.

a. Overpayment

Plaintiffs' assertion that they overpaid for their smartphones meets the threshold for injury in fact because Defendants allege they would have paid less for the phones had

1  Defendants not misrepresented the relevant features of the phones.  The Ninth Circuit has stated

2  that "[f]or each consumer who relies on the truth and accuracy of a label and is deceived by

3  misrepresentations into making a purchase, the economic harm is the same: the consumer has

4  purchased a product that he or she paid more for than he or she otherwise might have been

5  willing to pay if the product had been labeled accurately." Degelmann v. Advanced Medical

6  Optics, Inc., 659 F.3d 835, 839 (9th Cir. 2011), quoting Kwikset Corp. v. Superior Court, 51 Cal.

7  4th 310, 329, 246 P.3d 877 (2011). Here, Plaintiffs allege that Defendants' "advertisements and

8  packaging for the HTC EVO 3D and 4G smartphones contain inadequate disclosures about the

9  privacy and security defects complained of herein." (Dkt. No. 38 at 11.) Had they known about

10  how the phones actually worked, Defendants allege, they "would not have bought these HTC

11  smartphones." (Id. at 12.) "This economic harm—the loss of real dollars from a consumer's

12  pocket—is the same whether or not a court might objectively view the products as functionally

13  equivalent." Degelmann, 659 F.3d at 839.

14        In Degelmann, the Ninth Circuit held that a consumer has standing when he alleges that

15  he made a purchase because of "false labeling and advertising." 659 F.3d at 840 n.1; cf. Birdsong

16  v. Apple, 590 F.3d 955, 961 (9th Cir. 2009) (plaintiff does not adequately allege injury in fact

17  due to false labeling when defendant adequately disclosed potential risks to customers). False

18  labeling or advertising may include general statements or material omissions. For example, in

19  Degelmann, the Ninth Circuit held that defendant, a company that manufactured the contact lens

20  solution MoisturePlus, may have engaged in false labeling or advertising when it "knew that

21  MoisturePlus was a poor disinfectant compared to other similar products" but "the company

22  misled consumers into believing MoisurePlus was as effective as other solutions." 659 F.3d at

23  838. Plaintiffs were not required to identify a specific statement claiming that MoisturePlus did

24

1  not cause a particular type of infection. A general averment of quality, alleged to be false, was

2  sufficient to constitute an alleged injury in the form of overpayment. Id.

3      In this case, Plaintiffs plead an injury that is both "concrete and particularized." Lujan,

4  504 U.S. at 560.  The crux of Plaintiffs' claimed overpayment injury is that "Defendants'

5  advertisements and packaging for the HTC EVO 3D and 4G smartphones contain inadequate

6  disclosures" and that these omissions "affected Plaintiffs' and Class Members' decisions to

7  purchase and willingness to pay a certain price" for the phones. (Dkt. No. 38 at 11-2.) The

8  concrete harm is that Plaintiffs "were relieved of their money by [Defendants'] deceptive

9  conduct." Mazza v. Am. Honda Motor Co., 666 F.3d 581, 595 (9th Cir. 2012.) This harm is

10 particularized because each named Plaintiff actually bought one of the allegedly defective

11 phones. See Stearns v. Ticketmaster Corp., 655 F.3d 1013, 1021 (9th Cir. 2011) (distinguishing

12 suits previously permitted under state law where a representative plaintiff "need not even show

13 any connection to a defendant's conduct").

14          b.   Diminution in Value

15      Plaintiffs' second alleged injury, the diminution in value of their phones due to lost

16 battery utility and lifespan, also describes an injury in fact. Diminution in the performance of an

17 electronic device may constitute an injury in fact, but a plaintiff must "allege facts showing that

18 this is true." LaCourt v. Specific Media, Inc., 2011 WL 1661532 (C.D. Cal.); see also Del

19 Vecchio v. Amazon, 2011 WL 6325910 (W.D. Wash. 2011) (no standing where plaintiffs did not

20 allege that they discerned any difference in the performance of their computers because of

21 cookies); AtPac, Inc. v. Aptitude Solutions, Inc., 730 F. Supp. 2d 1174, 1185 (E.D. Cal. 2010)

22 (no standing where plaintiff did "not allege any facts that indicate that it incurred costs to update

23 its server security protocols or otherwise analyze the circumstances of the unauthorized server

24 access").

ORDER ON DEFENDANTS' MOTIONS TO
DISMISS- 11

1    Plaintiffs explicitly state that Defendants' actions "caused Plaintiffs' and Class Members'

2    smartphone batteries to discharge more quickly than they would have, but for Defendants'

3    collection of fine geographic information for Defendants' own purposes." (Dkt. No. 38 at 13.)

4    Defendants describe in detail how the alleged defect drains their batteries: the application sends

5    fine location data every three hours or whenever the device's screen is refreshed. (Dkt. No. 54 at

6    2; Dkt. No. 38 at 9.) Plaintiffs explain that the precise level of discharge "can be discerned

7    through mobile network carriers' diagnostic data collection." (Dkt. No. 54 at 13.) Beyond

8    reducing the daily battery life, Plaintiffs allege "Defendants reduced the utility and lifespan of

9    the phone batteries . . . because each charge and discharge cycle causes chemical changes in the

10   active battery material, diminishing the battery's storage capacity and requiring ever more

11   frequent recharging." (Id.)

12       This alleged injury is both specific and plausible. Defendants' first assertion, that "there

13   are other apps that utilize fine location data, which also affect battery life," may be true, but it

14   does not undermine Plaintiffs' allegation that the AccuWeather application plays a role in

15   draining the batteries of Plaintiffs' phones. (Dkt. No. 57 at 5-6.) Second, Defendants' attack on

16   the accuracy of Plaintiffs' allegation that AccuWeather's GPS collection "exceeded acceptable

17   norms" inappropriately inserts factual inquiries into a motion to dismiss. (Id. at 6.) In the context

18   of a motion to dismiss, the Court must construe the complaint in the light most favorable to the

19   plaintiff and accept all factual allegations as true. Cahill v. Liberty Mutual Ins. Co., 60 F.3d 336,

20   337-38 (9th Cir. 1996). Viewed in this light, Plaintiffs' battery life assertion states a valid injury.

21           c.   Misappropriation of Personally Identifiable Information

22       In contrast, Plaintiffs' assertion that Defendants misappropriated their personal

23   information is not a sufficiently particularized injury to support standing. To show injury in fact,

24   a plaintiff "must allege a distinct and palpable injury to himself, even if it is an injury shared by a

large class of other possible litigants." <u>Warth v. Seldin</u>, 422 U.S. 490, 501 (1975). "By

particularized, we mean that the injury must affect the plaintiff in a personal and individual

way." <u>Lujan</u>, 504 U.S. at 561 n.1. The "misappropriation" injury that Plaintiffs identify is both

vague and future-oriented.

Plaintiff's misappropriation claim is overly vague because it relies on the "abstract

concept of opportunity costs," and Plaintiffs do not "explain how they were deprived of the

economic value of their personal information simply because their unspecified personal

information was purportedly collected by a third party." <u>LaCourt</u>, 2011 WL 1661532 at 5.

Collection of data itself is not actionable, absent a specific statutory or constitutional right.

"Demographic information is constantly collected on all consumers by marketers, mail-order

catalogues and retailers," but courts have not held that "the value of this collected information

constitutes damage to consumers or unjust enrichment to collectors." <u>In re Doubleclick, Inc.</u>

<u>Privacy Litig.</u>, 154 F. Supp. 2d 497, 525 (S.D.N.Y. 2001); <u>see also</u> <u>In re JetBlue Airways Corp.</u>

<u>Privacy Litig.</u>, 379 F. Supp. 2d 299, 327 (E.D.N.Y. 2005) (airline's disclosure of passenger data

to third party in violation of airline's privacy policy had no compensable value).

Second, any injury from misappropriation occurs, if at all, too far in the future to be

actionable now. While Plaintiffs allege that Defendants left their personal information vulnerable

by transmitting it insecurely, no Plaintiff alleges he has been a victim of identity theft or that

such theft is imminent. (Dkt. No. 38 at 11.) In order to recover for an injury that is located in the

future, a plaintiff must show "a credible threat of harm" that is "both real and immediate, not

conjectural or hypothetical." <u>Krottner v. Starbucks Corp.</u>, 628 F.3d 1139 (9th Cir. 2010). In

<u>Krottner</u>, the Ninth Circuit held that the plaintiffs satisfied the injury requirement by alleging

they faced "a credible threat of real and immediate harm stemming from the theft of a laptop

1  containing their unencrypted personal data," including social security numbers and credit card

2  numbers. Id. at 1143. The alleged risk of harm here is less immediate, because Plaintiffs do not

3  allege that their personal data has been stolen, only that it is susceptible to theft. (Dkt. No. 38 at

4  11) Without a more specific threat, Plaintiffs' misappropriation claim does not state an injury.

5          d.  Statutory Standing

6          Lastly, "the actual or threatened injury required by Art. III may exist solely by virtue of

7  statutes creating legal rights, the invasion of which creates standing . . . ." Warth v. Seldin, 422

8  U.S. 490, 500 (1975). "Essentially, the standing question in such cases is whether the

9  constitutional or statutory provision on which the claim rests properly can be understood as

10  granting persons in the plaintiff's position a right to judicial relief." Id. In the online privacy

11  context, courts have held that alleged violations of the Wiretap Act, 18 U.S.C. § 2510 et seq., are

12  sufficient to establish that a plaintiff has suffered the injury required for standing under Article

13  III. See, e.g., In re Facebook Privacy Litig., 791 F. Supp. 2d 705, 711-12 (N.D. Cal. 2011). "Of

14  course, Art. III's requirement remains: the plaintiff still must allege a distinct and palpable injury

15  to himself, even if it is an injury shared by a large class of other possible litigants." Warth, 422

16  U.S. at 501.

17          As long as an individual has a "direct stake in the controversy," he has alleged injury in

18  fact. See United States v. SCRAP, 412 U.S. 669, 687 (1973). Therefore, to the extent that

19  Plaintiffs allege they have personally suffered injuries through the violation of statutory or

20  constitutional rights granting them the right to judicial relief, they allege injury in fact sufficient

21  to support standing under those statutes or constitutional provisions.

22      2.  Fairly Traceable

23          A plaintiff must show that his "injury is fairly traceable to the challenged action of the

24  defendant." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180

1    (2000). The chain of causation may have multiple links, but each link must be plausible, not

2    hypothetical or tenuous. <u>Nat'l Audubon Soc'y v. Davis</u>, 307 F.3d 835, 849 (9th Cir. 2002). "At

3    the pleading stage, general factual allegations of injury resulting from the defendant's conduct

4    may suffice, for on a motion to dismiss we presume that general allegations embrace those

5    specific facts that are necessary to support the claim." <u>Lujan</u>, 504 U.S. at 561 (citations omitted).

6            The link that Plaintiffs allege between Defendants' conduct and their overpayment and

7    diminution injuries is plausible, not hypothetical or tenuous. With regard to Defendant HTC

8    America, Plaintiffs allege "they overpaid for their smartphones because HTC impliedly

9    represented that the smartphones are free from material privacy and security vulnerabilities and

10   that HTC provided no disclosure regarding such vulnerabilities." (Dkt. No. 52 at 11.)  With

11   regard to the AccuWeather Defendants, Plaintiffs allege they "worked with HTC to integrate the

12   app into the HTC smartphone operating system, created an HTC specific location on

13   AccuWeather's servers for receipt of Plaintiffs' fine geographic location information, and

14   programmed the app . . . ." (Dkt. No. 50 at 12; Dkt. No. 38 at 7.) These allegations directly link

15   Defendants' alleged conduct to Plaintiffs' alleged injuries.

16           Defendants' attempts to lay blame for Plaintiffs' alleged injuries on the designers of other

17   software applications or on the users themselves are unpersuasive. (Dkt. No. 43 at 8; Dkt. No. 44

18   at 19.) The fact that Plaintiffs' "smartphones' GPS function may be used by any number of other

19   applications that users download and install voluntarily" does not mean that Plaintiffs' alleged

20   injuries cannot still be linked to Defendants' alleged conduct. (Dkt. No. 44 at 19.) The purpose of

21   the requirement that an injury be fairly traceable to a defendant's conduct is to ensure that the

22   alleged injury cannot be "the result of the independent action of some third party not before the

23   court." <u>Lujan</u>, 504 U.S. at 560. Plaintiffs adequately meet this requirement.

24

1

3.   <u>Redressability</u>

2

The last requirement for Article III standing is the clearest here. It must be "likely, as

3

opposed to merely speculative, that the injury will be redressed by a favorable decision." <u>Friends</u>

4

<u>of the Earth</u>, 528 U.S. at 181. The Supreme Court has held that when injury is alleged due to a

5

defendant's conduct, relief that "abates that conduct and prevents its recurrence provides a form

6

of redress." <u>Id.</u> at 186. Here, Plaintiffs seek a range of injunctive and monetary relief, which

7

would redress Plaintiffs' alleged injuries. (Dkt. No. 38 at 28-29.)

8

**D.  Application of the Fraud Pleading Requirements**

9

The heightened pleading requirements of Federal Rule 9(b) apply to Plaintiffs' claims

10

where fraud is an essential element or where Plaintiffs specifically allege fraudulent conduct.

11

Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the

12

circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The rule does not require that

13

allegations supporting a claim be stated with particularity when those allegations describe non-

14

fraudulent conduct. <u>Vess v. Ciba-Geigy Corp. USA</u>, 317 F.3d 1097, 1104 (9th Cir. 2003).

15

In the present case, Plaintiffs' claims do not "rely entirely on a unified fraudulent course

16

of conduct," so Plaintiffs' complaint is not "grounded in fraud." <u>Id.</u> at 1106. A complaint is not

17

"grounded in fraud" if at least some of its allegations are not based on fraud. <u>Id.</u> at 1105; <u>cf.</u>

18

<u>Kearns v. Ford Motor Co.</u>, 567 F.3d 1120, 1127 (9th Cir. 2004) (finding heightened pleading

19

requirements of Rule 9(b) apply even when fraud is not a necessary element of a claim if

20

plaintiff makes factual allegations that defendant engaged solely in fraudulent conduct). In the

21

present case, many of Plaintiffs' claims allege fraud, but others, such as Plaintiffs' claim under

22

the California Constitution's right to privacy or claims alleging merely unfair or unlawful

23

conduct, do not necessarily allege fraud. (Dkt. No. 38 at 26-27.) Plaintiffs cannot plead their way

24

around the requirements of Rule 9(b) by simply omitting the word "fraud" or by disclaiming that

1  they are alleging fraud. (Dkt. No. 50 at 13.) The Court must review each individual claim,

2  disregarding those averments of fraud that are insufficiently pled under Rule 9(b). Vess, 317

3  F.3d at 1105. The Court must then examine the allegations that remain to determine whether they

4  adequately state a claim under Rule 12(b)(6). Id.

5    **E. Plaintiffs' Claims for Relief**

6        1. Minnesota Statutory Claims

7          Plaintiffs' first four claims allege violations of the Minnesota Prevention of Consumer

8  Fraud Act, Minn. Stat. §§ 325F.68-.70; the Minnesota Unlawful Trade Practices Act, Minn. Stat.

9  §§ 325D.09-.16; the Minnesota Deceptive Trade Practices Act, Minn. Stat. §§ 325D.43-.48; and

10  the Minnesota False Statement in Advertisement law, Minn. Stat. §§ 325F.67. (Dkt. No. 38 at

11  17-21.) Without explanation, Plaintiffs assert, in a footnote to their response brief, that Plaintiff

12  "Olson does not bring and/or drops statutory claims under Minnesota law against AccuWeather."

13  (Dkt. No. 50 at 22 n.11.) The Court therefore considers these claims withdrawn against

14  AccuWeather and address only the adequacy of these claims as brought against Defendant HTC

15  America.

16          As an initial matter, because each of these Minnesota consumer fraud claims necessarily

17  involves averments of fraud, each must be pled with particularity as required by Rule 9(b). See

18  Kinetic Co. v. Medtronic, Inc., 672 F. Supp. 2d 933, 944 (D. Minn. 2009). Plaintiffs' assertion

19  that Rule 9(b) does not apply here because they "do not claim that Defendants committed

20  common-law fraud" is unpersuasive. (Dkt. No. 38 at 17.) Federal courts interpreting Minnesota's

21  consumer protection statutes have repeatedly held that Rule 9(b) applies to both Minnesota

22  statutory fraud and common law fraud claims. See, e.g., Drobnak v. Andersen Corp., 561 F.3d

23  778, 783 (8th Cir. 2009); Tuttle v. Lorillard Tobacco Co., 118 F. Supp. 2d 954, 963 (D. Minn.

24

1  2000) ("Notwithstanding the relative breadth of the consumer protection statutes, Rule 9(b)

2  applies where, as here, the gravamen of the complaint is fraud.").

3        A careful reading of Plaintiffs' four Minnesota law claims confirms that each alleges

4  fraudulent conduct and must be reviewed under Rule 9(b). <u>See</u> <u>Kearns</u>, 567 F.3d at 1127.

5  Plaintiffs' first claim, under Minnesota's Prevention of Consumer Fraud Act, Minn. Stat. §§

6  325F.68-.70, alleges Defendants "engaged in misrepresentations, unlawful schemes and course

7  of conduct intended to induce the Plaintiff Olson and members of the Minnesota Subclass to

8  purchase smartphones in violation of Minnesota's law . . . ."  (Dkt. No. 38 at 17.) Plaintiffs'

9  second claim, under Minnesota's Unlawful Trade Practices Act, Minn. Stat. §§ 325D.09-.16,

10 alleges Defendants "knowingly, in connection with the sale of smartphones, misrepresented the

11 true quality of the smartphones." (Dkt. No. 38 at 18.) Plaintiffs' third claim, under Minnesota's

12 Deceptive Trade Practices Act, Minn. Stat. §§ 325D.43-.48, alleges "Defendants engaged in

13 deceptive trade practices by . . . failing to disclose [] defects when Plaintiff Olson and the

14 members of the Minnesota Subclass purchased their smartphones." (Dkt. No. 38 at 19-20.)

15 Plaintiffs' fourth claim, under Minnesota' False Statement in Advertisement law, Minn. Stat. §

16 325F.67, alleges that "Defendants knowingly and intentionally . . . engaged in the dissemination

17 of false advertising." (Dkt. No. 3 at 20.)

18        Each of these claims fails because Plaintiffs do not meet the heightened pleading

19 standards of Rule 9(b). To sufficiently allege the "circumstances constituting fraud," a plaintiff

20 must include the "who, what, when, where, and how" of the alleged misconduct. <u>Ebeid ex rel.</u>

21 <u>United States v. Lungwitz</u>, 616 F.3d 993, 998 (9th Cir. 2010). Acknowledging that particularity

22 requirements vary case by case, Plaintiffs' complaint here is the opposite of particularity. <u>Id.</u> at

23 998.  Plaintiffs' complaint does not identify or discuss a single statement, even to show a

24

material omission. (Dkt. No. 38 at 18.) Plaintiffs' complaint also does not identify who made the allegedly deceptive statements, when they were made, or how these statements were communicated. (Id.)

The fact that Minnesota law "broadly construe[s]" these statutes "to enhance consumer protection" does not relieve Plaintiffs of the requirements of Rule 9(b). Kinetic, 672 F. Supp. 2d at 945. "[W]hile a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the circumstances of the fraud must be stated with particularity is a federally imposed rule." Vess, 317 F.3d at 1103. No amount of liberal construction can hide the fact that Plaintiffs here do not describe the alleged misconduct with particularity. Ebeid, 616 F.3d at 998. However, because it is not clear that amendment would be futile, Plaintiffs' Minnesota claims against HTC America are dismissed with leave to amend to include facts meeting the requisite standard of particularity. See Luce v. Edelstein, 802 F.2d 49, 56 (2d Cir. 1986).

2.   California Statutory Claims

Plaintiffs' fifth claim alleges violations of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 et seq., and Plaintiffs' sixth claim alleges violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq. (Dkt. No. 38 at 21-24.) Because fraud is not an essential element of claims under the CLRA and UCL, the Court need only apply the heightened pleading requirements of Rule 9(b) to averments of fraud. See, e.g., Vess, 317 F.3d at 1103; Kearns, 567 F.3d at 1125.

a.   CLRA

The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770. An action may be brought under the CLRA pursuant to § 1780(a), which provides that any "consumer who suffers any damage as a result of the use or

1  employment by any person of a method, act, or practice declared to be unlawful by Section 1770

2  may bring an action against such person." Cal. Civ. Code § 1780(a). The statute proscribes a

3  variety of conduct, including "[r]epresenting that goods or services are of a particular standard,

4  quality, or grade, or that goods are of a particular style or model, if they are of another." Cal.

5  Civ. Code § 1770(a)(7).

6       As an initial matter, Plaintiffs' CLRA claim applies only to Defendant HTC America, not

7  to Defendant AccuWeather. This is because the CLRA applies only to "goods or services." Cal

8  Civ. Code § 1761(d). A software application is neither a "good" nor a "service." See Ferrington

9  v. McAfee, 2010 WL 3910169, at 19 (N.D. Cal. Oct. 5, 2010). In contrast, the Northern District

10  of California recently held that a smartphone is a "good" under the CLRA. In re iPhone

11  Application Litig., Case No. 11-MD-02250-LHK, Dkt. No. 69 at 34 (N.D. Cal. June 12, 2012).

12       The heightened pleading standards of Rule 9(b) apply to Plaintiffs' CLRA claim because

13  it specifically alleges fraudulent conduct. See Kearns, 567 F.3d at 1125. Plaintiffs' CLRA claim

14  specifically alleges that Defendant HTC America "had exclusive knowledge of material facts not

15  known to the plaintiff" and that Plaintiff Goodman relied on those facts in purchasing his phone.

16  (Dkt. No. 52 at 17.) However, Plaintiffs do "not specify what the advertisements and other sales

17  material allegedly relied upon by the plaintiff stated, which sales material the plaintiff relied

18  upon, and who made the misleading statements plaintiff relied upon and when these statements

19  were made." Pelletier v. Pacific WebWorks, Inc., 2012 WL 3481 (E.D. Cal. Jan 9, 2012).

20  Without alleging these particular facts, Plaintiff Goodman's CLRA claim against HTC America

21  does not meet the requirements of Federal Rule 9(b).  It is therefore dismissed with leave to

22  amend to include facts meeting the requisite standard of particularity.

23

24

b.  UCL Claims

In contrast, Plaintiffs adequately state a claim under two prongs of California's Unfair Competition Law. Cal Bus. & Prof. Code § 17200. The UCL creates a cause of action for business practices that are: (1) unlawful, (2) unfair, or (3) fraudulent. Id. The UCL's coverage has been described as "sweeping," and its standard for wrongful business conduct is "intentionally broad." In re First Alliance Mortg. Co., 471 F.3d 977, 995 (9th Cir. 2006). Each prong of the UCL provides a separate and distinct theory of liability. Lozano v. AT&T Wireless Servs., Inc., 504 F.3d 718, 731 (9th Cir. 2007).

To establish standing under the UCL, a plaintiff must claim he personally lost money or property because of his own actual and reasonable reliance on the allegedly unlawful business practices. Kwikset Corp. v. Superior Court, 51 Cal. 4th 310, 330 (2011); Cal. Bus. & Prof. Code § 17204. Two ways a plaintiff can show he has standing under the UCL are by alleging he "surrender[ed] in a transaction more, or acquire[d] less, than he or she otherwise would have" or that he had "a present or future property interest diminished." Because Plaintiffs allege harm by overpayment and diminution, they have standing under the UCL.

Plaintiffs adequately state claims under the UCL's "unlawful" and "unfair" prongs, but their claim under the UCL's "fraud" prong fails because it is subject to the heightened pleading requirements of Federal Rule 9(b). The unlawful prong of the UCL prohibits "anything that can be properly called a business practice and that at the same time is forbidden by law." Cel-Tech Commc'ns, Inc., v. L.A. Cellular Tel. Co., 20 Cal 4th 163, 180 (1999). An alleged violation of the California Constitution's right to privacy serves as a predicate claim under the unlawful prong. (See infra § 3.) Therefore, to the extent Plaintiffs may pursue a claim under the California Constitution's right to privacy, they may also pursue a claim under the unlawful prong of the UCL.

1        Plaintiffs also adequately state a claim under the "unfair" prong of the UCL because they

2    allege Defendants engaged in unfair conduct. "A practice may be deemed unfair even if not

3    specifically proscribed by some other law." <u>Boschma v. Home Loan Ctr., Inc.</u>, 198 Cal. App. 4th

4    230, 252 (Cal. App. 2011). To determine whether a business practice is unfair, courts weigh the

5    practice's impact on its alleged victim against the reasons, justifications and motives of the

6    alleged wrongdoer. <u>S. Bay Chevrolet v. Gen. Motors Acceptance Corp.</u>, 72 Cal. App. 4th 861,

7    886-87 (1999). Balancing is the most common test, but courts have also found business practices

8    to be unfair under the UCL when they violate public policy as declared by "specific

9    constitutional, statutory or regulatory provisions," or when a practice is "immoral, unethical,

10   oppressive, unscrupulous, or substantially injurious to consumers." <u>Bardin v. DaimlerChrysler</u>

11   <u>Corp.</u>, 136 Cal. App. 4th 1255, 1260-61 (2006).

12       Regardless of what test the Court applies, the Court cannot find at this stage that

13   Plaintiff's claim is precluded as a matter of law. <u>See</u> <u>In re iPhone Application Litig.</u>, Case No.

14   11-MD-02250-LHK, Dkt. No. 69 at 37 (N.D. Cal. June 12, 2012). Plaintiff Goodman alleges that

15   Defendants tracked his fine location data and shared it with third parties over a substantial period

16   of time, without his knowledge or consent. (Dkt. No. 52 at 19.) Among other harms, Plaintiff

17   alleges this needlessly shortened the life of each battery charge, as well as shortening the overall

18   lifespan of the battery. (Dkt. No. 38 at 12-13.) Considering similar factual allegations, the district

19   court in <u>In re iPhone Litig.</u> explained, "[i]t is possible that [Defendants'] conduct might be useful

20   to society, and that this benefit outweighs the harm to Plaintiffs. For example, if [Defendant] is

21   collecting data to improve its own services, the benefit may outweigh the intrusion of collecting

22   user's location data." Case No. 11-MD-02250-LHK, Dkt. No. 69 at 37.

23

24

1    However, it is premature to say that Defendants' practices are not injurious to

2  consumers, or that any benefit to consumers outweighs the harm. Additionally, without

3  concluding that Defendants have violated a California public policy, Plaintiff's allegations under

4  the California Constitution's right to privacy sufficiently allege a harm that is "tethered to

5  specific constitutional, statutory, or regulatory provisions." <u>Drum v. San Fernando Valley Bar</u>

6  <u>Ass'n</u>, 182 Cal. App. 4th 247, 256-57 (2010). Thus, Plaintiffs' allegations are sufficient to state a

7  claim under the "unfair" prong of the UCL.

8         3.  <u>California Constitutional Claim</u>

9    The California Constitution creates a privacy right that protects individuals from the

10 invasion of their privacy not only by state actors, but also by private parties. Cal. Const. art. I, §

11 1; <u>Am. Acad. of Pediatrics v. Lungren</u>, 16 Cal. 4th 307 (1997); <u>Leonel v. Am. Airlines, Inc.</u>, 400

12 F.3d 702, 711-12 (9th Cir. 2005). To state a claim under the California Constitution's right to

13 privacy, a plaintiff must first demonstrate three elements: (1) a legally protected privacy interest;

14 (2) a reasonable expectation of privacy under the circumstances; and (3) conduct by the

15 defendant that amounts to a serious invasion of the protected privacy interest. <u>Hill v. Nat'l</u>

16 <u>Collegiate Athletic Ass'n</u>, 7 Cal. 4th 1, 35-37 (1994). "These elements do not constitute a

17 categorical test, but rather serve as threshold components of a valid claim to be used to "weed

18 out claims that involve so insignificant or de minimis an intrusion on a constitutionally protected

19 privacy interest as not even to require an explanation or justification by the defendant." <u>Leonel</u>,

20 400 F.3d at 712 (internal citations omitted). If these three threshold elements are satisfied, a court

21 must weigh and balance defendant's justification for the conduct in question against the intrusion

22 on the plaintiff's privacy resulting from the conduct. <u>Id.</u> at 714.

23    As an initial matter, Plaintiff Goodman has standing to pursue his claim under the

24 California Constitution's right to privacy. Although a plaintiff must demonstrate injury in fact,

1    violations of rights created by statute are sufficient for standing purposes. See Trafficante v.

2    Metropolitan Life Ins. Co., 409 U.S. 205 (1972); Fulfillment Servs., Inc. v. UPS, 528 F.3d 614,

3    618-19 (9th Cir. 2008) ("The injury required by Article III can exist solely by virtue of statutes

4    creating legal rights, the invasion of which creates standing."). A state constitutional or statutory

5    provision conferring standing does not replace the requirements of Article III, but it serves to

6    expand standing in federal court "to the full extent permitted under Article III." Bennett v. Spear,

7    520 U.S. 154, 165 (1997). "Thus, we must look to the text of [the statute] to determine whether it

8    prohibited Defendants' conduct; if it did, then Plaintiff[s] ha[ve] demonstrated an injury

9    sufficient to satisfy Article III." Edwards v. First American Corp., 610 F.3d 514, 517 (9th Cir.

10   2010).

11         Plaintiffs adequately allege a legally protected privacy interest in their fine location data

12   and location history. (Dkt. No. 38 at 26.) Legally protected privacy interests include "conducting

13   personal activities without observation, intrusion, or interference" as determined by "established

14   social norms." Hill, 7 Cal. 4th at 36-37. The California Supreme Court has explained that

15   "[i]nformational privacy is the core value furthered by the Privacy Initiative." White v. Davis, 13

16   Cal. 3d 757, 774 (1975). In fact, the Ballot Argument in support of the California privacy

17   initiative stated that the right would "prevent[] government and business interests from [1]

18   collecting and stockpiling unnecessary information about us and from [2] misusing information

19   gathered for one purpose in order to serve other purposes or to embarrass us." Ballot Pamp.,

20   Proposed Stats. and Amends. to Cal. Const. with arguments to voters, Gen. Elec. (Nov. 7, 1972),

21   p. 27.

22         Taking their factual allegations as true and drawing all inferences in Plaintiffs' favor, the

23   conduct that Plaintiffs allege constitutes the violation of a legally protected privacy interest.

24

ORDER ON DEFENDANTS' MOTIONS TO
DISMISS- 24

1    Plaintiffs allege that Defendants not only tracked their locations, but also compiled this

2    information to analyze their behavior and build profiles about them. (Dkt. No. 38 at 10.)

3    Plaintiffs allege that Defendants "obtained sensitive personal information . . . including, inter

4    alia, a continually updated log of precisely where they live, work, park, dine, pick up children

5    from school, worship, vote, and assemble, and what time they are ordinarily at these locations."

6    (Dkt. No. 50 at 18.)

7        Plaintiffs allege that the AccuWeather application transmitted their fine GPS location

8    data every three hours that the phones were on, whenever a user tapped the weather icon, or

9    "whenever a device user switched from another application or refreshed the screen." (Dkt. No.

10    54 at 2.) Beyond simply collecting this information, Plaintiffs allege that Defendant

11    AccuWeather "transmitted user data to a third-party tracking company, Scorecard Research,

12    which then set its own persistent, unique identifier on the user's device." (Id. at 2.) While these

13    assertions have not been proven, the Court cannot reasonably conclude, as a matter of law, that

14    these allegations do not describe invasion of a legally protected privacy interest.

15        Second, Plaintiffs adequately allege that they had a reasonable expectation of privacy

16    under the circumstances. "A reasonable expectation of privacy is an objective entitlement

17    founded on broadly based and widely accepted community norms." Hill, 7 Ca. 4th at 37 (internal

18    citations omitted). "The extent of a privacy interest is not independent of the circumstances." Id.

19    at 37. Here, Plaintiffs allege that they did not expect or believe that Defendants would collect or

20    disseminate their fine location data for purposes unrelated to weather information. (Dkt. No. 50

21    at 19.) Defendants' argument that Plaintiffs did not have a reasonable expectation of privacy

22    because "Plaintiffs admit that they expected their HTC smartphones to transmit GPS location

23    data for some apps" is unpersuasive. (Dkt. No. 58 at 15.) While Plaintiffs may have expected

24

1  their phones to transmit fine GPS data occasionally for certain reasons, they did not expect their

2  phones to continually track them for reasons not related to consumer needs. (Id.) Plaintiffs also

3  did not expect Defendants to compile profiles about them or to share those profiles with third

4  parties. (Id.)

5        Third, Plaintiffs' assertions are sufficient at the motion to dismiss stage to find that

6  Defendants' alleged conduct constitutes a serious invasion of a protected privacy interest.

7  "Actionable invasions of privacy must be sufficiently serious in their nature, scope, and actual or

8  potential impact to constitute an egregious breach of the social norms underlying the privacy

9  right." Hill, 7 Cal. 4th at 37. Here, Defendants' reliance on cases involving collection of a

10 person's home addresses is inapposite. (Dkt. No. 57 at 11, citing Folgestrom v. Lamps Plus, Inc.,

11 195 Cal. App. 4th 986 (2011).) Unlike collecting someone's address or telephone number, which

12 courts have called "routine commercial behavior," Plaintiffs allege that Defendants engaged in

13 the continuous tracking of their location and movements, and that Defendants built and sold

14 individualized profiles containing this information. Id. at 992; (Dkt. No. 52 at 19).

15       Collection of fine location data is more sensitive than collecting home addresses or

16 telephone numbers because people often carry their smartphones with them wherever they go.

17 (Dkt. No. 52 at 20.) Although in a different context, the U.S. Supreme Court recently described

18 the way a GPS device functions. Unlike other ways of gathering information, "GPS monitoring

19 generates a precise, comprehensive record of a person's public movements that reflects a wealth

20 of detail about her familial, political, professional, religious, and sexual associations. United

21 States v. Jones, 132 S. Ct. 945, 955 (2012) (Sotomayor, J., concurring). Such GPS data

22 invariably may disclose trips, "the indisputably private nature of which takes little imagination to

23 conjure: trips to the psychiatrist, the plastic surgeon, the abortion clinic, the AIDS treatment

24

1   center, the strip club, the criminal defense attorney, the by-the-hour motel, union meeting,

2   mosque, synagogue or church, the gay bar and on and on." Id. Taking Plaintiffs' factual

3   allegations as true and drawing all inferences in their favor, Plaintiffs adequately allege a

4   violation of the California Constitution's right to privacy.

5        4.   Washington Statutory Claims

6        Plaintiffs' seventh claim alleges Defendants violated the Washington Consumer

7   Protection Act, RCW 19.86.010 et seq. (Dkt. No. 38 at 25.) To prevail on a private claim under

8   the WCPA, a plaintiff must show: (1) an unfair or deceptive act or practice, (2) that occurs in

9   trade or commerce, (3) a public interest, (4) injury to the plaintiff in his or her business or

10  property, and (5) a causal link between the unfair or deceptive act and the injury suffered. Indoor

11  Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc., 162 Wn.2d 59, 74 (2007)

12  (citing Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 784

13  (1986).

14       Although fraud is not a necessary element of a WCPA claim, Plaintiffs' WCPA claim

15  here alleges fraudulent conduct. (Dkt. No. 38 at 25.) For example, in their WCPA claim,

16  Plaintiffs allege that Defendants, "individually and/or jointly, engaged in misrepresentations,

17  omissions of material information, and/or wrongful courses of conduct as described above that

18  had the capacity to deceive a substantial portion of the public." (Id.) Plaintiffs offer no theory

19  whereby Defendants conduct would be unfair, but not deceptive. (Id.) Therefore, the heightened

20  pleading standards of Rule 9(b) apply. See Kearns, 567 F.3d at 1125. As with Plaintiffs' other

21  fraud claims, Plaintiffs' generic claims of inadequate disclosures do not specify the who, what,

22  or when of the alleged misconduct. See Ebeid, 616 F.3d at 998. Plaintiffs' WCPA claim is

23  therefore dismissed with leave to amend by including facts meeting the requisite standard of

24  particularity.

5.   <u>Unjust Enrichment</u>

In their memorandum in opposition to HTC America's motion to dismiss, Plaintiffs clarify that they bring their unjust enrichment claim on behalf of all Plaintiffs under Washington law, not the laws of any other state. (Dkt. No. 52 at 27 n.16.) The Court therefore considers this claim as brought only under Washington law. The elements of an unjust enrichment claim in Washington are: (1) a benefit conferred on defendant by the plaintiff; (2) appreciation or knowledge of the benefit; and (3) that retention of the benefit would be unjust under the circumstances. <u>Bailie Commc'ns, Ltd. v. Trend Bus. Sys., Inc.</u>, 61 Wn.App. 151, 160 (1991).

Plaintiffs adequately state an unjust enrichment claim under Washington law. First, Plaintiffs allege that Defendants benefited through the sales of HTC smartphones that would not have otherwise occurred had Plaintiffs been fully informed about the tracking function of the phones and the related effect on their phones' battery life. (Dkt. No. 50 at 23.) Second, Plaintiffs allege that Defendants were aware of the benefit. (<u>Id.</u>) Third, Plaintiffs allege that it is unjust for Defendants to retain the benefit conferred because Defendants have profited "by misleading and economically harming Plaintiffs." (<u>Id.</u> at 24.) Defendants assert that Plaintiffs cannot bring an unjust enrichment claim because their injuries are wholly speculative (Dkt. No. 58 at 16). This argument fails in light of the earlier determination that two of Plaintiffs' alleged economic injuries are sufficiently pled.

6.   <u>Proposed Class Action</u>

Finally, Defendant HTC America asks the Court to strike Plaintiffs' allegations on behalf of the putative national class because Plaintiffs cannot maintain a class asserting common law unjust enrichment claims under the laws of all fifty states and cannot satisfy the commonality or typicality requirements of Rule 23(a). (Dkt. No. 44 at 31.) Because it is not apparent from the

1 pleadings that Plaintiffs cannot satisfy the requirements of Rule 23, this request is premature and

2 is denied at this time.

3                                              **Conclusion**

4          Defendant HTC America's motion for judicial notice is DENIED because the

5 authenticity of the submitted documents is in controversy. Because most of Plaintiffs' consumer

6 protection claims allege fraudulent conduct, but Plaintiffs do not allege fraud with particularity,

7 Plaintiffs' first, second, third, fourth, fifth, and seventh claims are DISMISSED with leave to

8 amend. Plaintiff's sixth claim, for violation of the "fraud" prong of California's Unfair

9 Competition Law, is DISMISSED with leave to amend for the same reason. Plaintiffs' claims

10 under the UCL's unfair and unlawful conduct prongs, along with Plaintiffs' claims for violation

11 of the California Constitution's right to privacy and for unjust enrichment, survive at this stage.

12          An amended complaint is due within 14 days of the entry of this order.

13          The clerk is ordered to provide copies of this order to all counsel.

14          Dated this 26th day of June, 2012.

15

16

17                                         Marsha J. Pechman
                                           United States District Judge
18

19

20

21

22

23

24